UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x

ELIZABETH RAMOS-BOYCE,

    Plaintiff,

  -against-                                      04 Civ. 7305 (CM)(MDF)

FORDHAM UNIVERSITY,

    Defendant.

———————————————————————x

**MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT**

McMahon, J.:

    Plaintiff Elizabeth Ramos-Boyce worked as a secretary at Fordham University. After she suffered an elbow injury that became increasingly debilitating, plaintiff was placed on leave. A year later, when she did not return to work, her employment ended as per her Union's Collective Bargaining Agreement ("CBA") with Fordham.

    Plaintiff alleges that she was illegally terminated, denied a reasonable accommodation for her disability, and subjected to retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e. ("Title VII"). Since plaintiff adduces no evidence from which a reasonable trier of fact could reach such conclusions, defendant's motion for summary judgment dismissing the Complaint is granted.

### Statements of Undisputed Fact

    Elizabeth Ramos-Boyce worked as a secretary at Fordham University's Graduate School of Business, and was a member of the bargaining unit represented by Office and Professional Employees International Union, Local 153. (Def.'s 56.1 St. ¶¶ 1, 2). In November 2002, plaintiff suffered an injury to her elbow at work. (Complaint ("Cplt.") ¶ 8; Pl.'s Ex. H). Fordham accommodated her injury until March 11, 2003, when it placed her on a leave of absence. (Cplt. ¶ 8; Pl.'s Ex. E, J). Plaintiff filed for Workers Compensation benefits in March 2003, and continues to receive benefits for her elbow injury.[1] (Def.'s 56.1 St. ¶¶ 8, 9).

---

[1] Plaintiff alleges that she notified Fordham of her Workers' Compensation claim on March 11, 2003 – the same day that she was placed on a leave of absence. Fordham maintains

At the time plaintiff commenced her leave, her physician filed a doctor's note saying that she was unable to use her right arm. (Pl.'s Ex. N). Less than a month after going on leave, plaintiff notified her Union shop steward that she was unable to use her right arm. (Def.'s Ex. K). A subsequent medical report filed with New York's Workers' Compensation Board stated that plaintiff was totally disabled. (Def.'s Ex. L). On January 7, 2004, plaintiff's physician filled out a disability certificate, stating that plaintiff "is totally disabled." (Def.'s Ex. M). On February 27, 2004, plaintiff submitted a doctor's note to Fordham, stating that she "remains totally disabled and unable to return back to her former occupation." (Def.'s Ex. I; Def.'s 56.1 St. ¶ 29).

On March 31, 2004, pursuant to a clause in her Union's Collective Bargaining Agreement that caps a member's disability leave at twelve (12) months, Fordham ended plaintiff's employment because she had failed to return to work. (Def.'s Ex. N; Def.'s 56.1 St. ¶¶ 32, 35). Under the terms of the CBA, if a Union employee fails to return from a disability leave after expiration of a full year, the employee is considered to have resigned. (Id.)

Although Fordham representatives made themselves aware, early on during plaintiff's leave, about exactly how long they were contractually required to leave plaintiff's job open, there is not a scintilla of evidence tending to show that Fordham took any steps to fill plaintiff's job prior to the expiration of the twelve month period. Rather, the undisputed evidence demonstrates that plaintiff's job was kept open and available to her for a full year, and that it was posted after her termination, consistent with the terms of the CBA. (Def.'s 56.1 St. ¶ 36). Moreover, plaintiff was invited to apply for a new job at Fordham when she protested her termination. She chose not to do so. (Def.'s 56.1 St. ¶¶ 41, 43).

On May 20, 2004, plaintiff filed a "Discharge or Discrimination Complaint" with the State of New York Workers' Compensation Board seeking redress for alleged discrimination. (Def.'s Ex. H). A decision was issued by the Board on April 18, 2005, disallowing plaintiff's claim and closing the case. (Def.'s Ex. R). The decision concluded that Fordham did not discriminate or retaliate against plaintiff, but rather that plaintiff was placed on leave due to her inability to perform her specific duties, and that she was ultimately terminated because she did not return to work with in twelve months, as mandated by her union contract. (Id.)

On June 4, 2004, plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination under the ADA and retaliation under Title VII. (Def.'s Ex. G). Upon receiving a "Right to Sue" letter from the EEOC on June 28, 2004, plaintiff filed the present action. (Cplt. ¶ 12).

---

that it was not notified of plaintiff's decision to file for Workers' Compensation benefits until March 12, 2003. (Def.'s 56.1 St. ¶ 8 n.2). This factual dispute is not material to the outcome of the case. For purposes of the instant motion, I view the facts most favorably to plaintiff, the non-movant, and so adopt the position that Fordham was notified about the claim on March 11.

2

## Standards on a Summary Judgment Motion

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56 (c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Whether any disputed issue of fact exists is for the Court to determine. Balderman v. United States Veterans Admin., 870 F. 2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986).

Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F. 3d 105, 114 (2d Cir. 1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." Anderson, 477 U.S. at 248. Finally, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Industries Co., 475 U.S. at 586. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.

## Conclusions of Law

1. Plaintiff's Claim That She Was Placed On Leave
   In Violation of Her Rights is Time-Barred

Fordham put plaintiff on leave as of March 11, 2003. Placing plaintiff on leave was a discrete act affecting her employment. Therefore, the limitations clock started on the day her leave began. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

Plaintiff had 300 days from March 11, 2003 to complain to the EEOC or the New York State Division of Human Rights concerning being placed on leave. See Kendall v. Fisse, 2005 WL 2076882, *1 (2d Cir. Aug. 29, 2005). However, she did not file any complaint until after June 4, 2004. (Def.'s Ex. G). The fact that she was ultimately terminated did not convert that act into a "continuing violation." Fol v. City of New York, 2003 WL 21556938 (S.D.N.Y. 2003); Elmenayer v. ABF Freight Sys., Inc., 318 F. 3d 130 (2d Cir. 2003). Therefore, plaintiff's claim relating to being placed on leave status is dismissed as barred by the statute of limitations.

2. Plaintiff's Claim That Fordham Violated the
   ADA Must Be Dismissed

   *A. The Undisputed Evidence Establishes That Plaintiff
   Was Not Qualified to Perform Her Job, So Plaintiff
   Has No Viable Claim for Wrongful Termination*

A plaintiff suing for disability discrimination under the ADA bears the initial burden of establishing a prima facie case by showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004).

The undisputed evidence in this case indicates that, throughout the period of her leave and up to the day she was discharged, plaintiff's physician provided her and Fordham with doctor's notes stating that Boyce was "totally disabled," unable to return to her job, and unable to "do any type of work." (Def.'s Ex. I, L, M.) Indeed, with but weeks to go on her disability leave, plaintiff submitted a doctor's note to Fordham indicating that plaintiff "underwent surgery . . . and she is totally disabled." (Def.'s Ex. M).

The contents of these notes is confirmed by plaintiff's own contemporaneous conduct. Plaintiff admitted at her deposition that all her doctors' notes indicated that she was unable to work. (Def.'s Ex. A). Plaintiff did not complain when she was placed on Workers' Compensation leave in March 2003; on the contrary, she complained to her Union representative that Fordham was challenging her right to receive benefits. (Def.'s Ex. K).

Additionally, on repeated occasions during her disability leave – including a mere month prior to her discharge – plaintiff told the New York State Workers' Compensation Board that she was totally unable to work and submitted medical documentation in support of her claim. (Def.'s Ex. I, J, K, L, M and R). That documentation consistently assessed Boyce as totally disabled and unable to return to her former position. Indeed, plaintiff continued to submit documentation to the Board showing her as totally disabled for a full year after she was fired. (Def.'s Ex. E).

Of course, plaintiff's receipt of Workers' Compensation Benefits does not automatically bar her ADA claim. In an analogous context, it has been held that an individual's receipt of Social Security Disability Benefits does not automatically bar a claim under the ADA, because the definition of disability under the two statutes is not identical. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999). The fact that Cleveland concerned Social Security Disability and this case involves Workers Compensation is not a difference that makes a difference; in this Circuit, the Cleveland standard applies if a plaintiff files for Workers Compensation as well. See Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 7 (2d Cir. 1999).

4

But the Cleveland standard does not mean that plaintiff's statements to the Workers' Compensation Board are of no relevance. Rather, the Cleveland court held that an ADA plaintiff who is receiving disability benefits must proffer a "sufficient explanation" for why she asserted total disability in the agency proceeding while maintaining that she was a "qualified individual with a disability" in the ADA action. Cleveland, 526 U.S. at 806. Courts in the Second Circuit grant summary judgment in favor of defendant employers when plaintiffs fail to offer such "sufficient explanation" for their disparate stances. Rivera v. Apple Indus. Corp., 198 F. Supp. 2d 219, n.7 (E.D.N.Y. 2001); Ward v. Washington Mills, 92 F. Supp. 2d 168, 173 (W.D.N.Y. 2000).

Here, plaintiff has not offered any explanation, let alone a "sufficient explanation," about how she could be totally disabled for Workers' Compensation purposes yet meet the "qualified individual with a disability" standard under the ADA. This inconsistency is fatal to her claim.

Plaintiff's argument that Fordham should have "kept open" the "lines of communication" so the parties could have worked out a solution that permitted her to return to work is disingenuous. At no time during her leave did plaintiff ever submit a doctor's note or otherwise indicate that she was able to return to work, either with or without an accommodation. Instead, every communication from plaintiff or her physicians indicated that she was totally disabled.

The dramatic statement, "Stitches, bleeding, I would have gone into work," if she had known that her job was in jeopardy (Pl Memorandum at 18-19), is of no moment. Her physicians consistently and categorically said that Boyce was not able to work and she did not offer to return to work or show up for work. Therefore, she fails to make out the first element of a prima facie case of disability discrimination – namely, that she was an "otherwise qualified" person with a disability.

   B. *Plaintiff's Failure to Accommodate Claim Must be Dismissed*

The evidence cited above also demonstrates that plaintiff cannot sustain a failure to accommodate claim.

Plaintiff does not dispute Fordham's assertion that her disability was accommodated through March 11, 2003, when she was placed on disability leave. Neither does she dispute that, during the year when she was out on leave, she never once told Fordham that she could return to work with an accommodation or suggested any accommodation that might have permitted her to come back to work. The doctors' notes provided to Fordham by plaintiff did not suggest that Boyce could return to work with accommodations.

While much of the deposition testimony plaintiff adduced in this action (including testimony from one of the doctors that contradicted the note he signed during plaintiff's disability) was intended to establish how plaintiff might have been accommodated, the fact remains that Boyce's consistent position throughout the year of leave was that she was totally disabled and could not return to her job. Having taken that position consistently throughout her

5

leave, Boyce cannot now claim that she could have returned to work with accommodations. Her after-the-fact effort to create a disputed issue concerning accommodation does not excuse or overcome her failure to identify or negotiate for an accommodation during her leave. Plaintiff's accommodation claim must be dismissed.

Finally, if it is plaintiff's position that Fordham should have kept her on the payroll and accommodated her disability, rather than putting her on leave in the first place, then the accommodation claim is time-barred, since it would have accrued on March 11, 2003 and was not administratively filed until June 4, 2004 – well beyond the 300 day statute of limitations.

### C.     *Plaintiff Adduces No Evidence Whatever of Retaliation*

There is not a scintilla of evidence in the record to support plaintiff's claim that she was discharged in retaliation for filing a Workers' Compensation Claim. Rather, all the evidence demonstrates that plaintiff was discharged because she did not return to work after being out on disability leave for a year. The Collective Bargaining Agreement that covered plaintiff required Fordham to keep her job open for one year after she went out on disability leave. Plaintiff was let go after that year expired.

Plaintiff offers no evidence that contradicts this conclusion or that admits of an inference of retaliation. Her reasoning is syllogistic: "I filed for Workers' Compensation, Fordham opposed my application; therefore when I was fired it must have been in retaliation." Such argument is not *evidence* of retaliation and is insufficient to prevent entry of summary judgment in favor of the employer. Plaintiff must submit evidence of a causal connection between her protected act and her loss of employment. Doria v. Cramer Rosenthal McGlynn, Inc., 942 F.Supp. 937, 943 (S.D.N.Y. 1996) ("In order to make out a prima facie retaliation claim, a causal connection between the protected act and the adverse employment action must be established"); see also Lapsley v. Columbia Univ. – College of Physicians & Surgeons, 999 F.Supp. 506, 525 (S.D.N.Y. 1999) (granting summary judgment in favor of defendants where plaintiff failed to demonstrate causal connection between making certain comments and being discharged). The record before this court is barren of any such evidence.

Plaintiff's argument is also not logical, as the Workers' Compensation Board concluded when it dismissed an identical retaliation claim asserted before it: "It is not credible that the employer bided its time for twelve months to only then spring its retaliatory trap." (Def.'s Ex. R).

Plaintiff's desire to extend the period when her job would be held for her is understandable, but irrelevant. Fordham was within its contract rights to fill plaintiff's job when she did not return after a year. It is undisputed that plaintiff not only did not return, but

she did not return after a year. It is undisputed that plaintiff not only did not return, but (according to her doctors) she could not return, either in March of 2004 or for many months thereafter. Plaintiff offers no evidence that Fordham ever permitted any other employee to return to work after the CBA-mandated one year period expired. And no inference of retaliation can be drawn from the fact that Fordham employees educated themselves about how long they were contractually required to hold plaintiff's job open before they could deem her to have forfeited the right to return to work.

What seems obvious, in view of the undisputed evidence, is that plaintiff was unaware of the terms of her own CBA, and so was surprised when she was discharged (or "deemed to have resigned") after being out on disability leave for a year. But plaintiff's lack of knowledge is neither Fordham's fault nor its responsibility.

Because the retaliation claim is easily dismissed for failure to offer any evidence in support thereof, it is not necessary to engage in a lengthy analysis of whether the claim might be precluded under state law doctrines of issue or claim preclusion. Hoblock v. Albany County Bd. of Elections, 422 F. 3d 77 (2d Cir. 2005).

## Conclusion

Defendant's motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment dismissing the case, with costs to defendant, and then to close the file. Any pending motions not disposed of by this decision are denied as moot.

Dated: November 16, 2005

_____
U.S.D.J.

BY FAX TO ALL COUNSEL